And we'll give everybody a minute just to get settled up here at the council table. Okay. Ms. Glasshouse. Good morning, your honors. May it please the court. Kara Sternquist built guns at home after receiving death threats because she is a trans woman. She was afraid, and the Second Amendment should have protected her. Instead, because of old convictions for making fake IDs, she was arrested and shackled to a bed for almost two years, even though she is paralyzed below the waist. Her conviction should be vacated, or at the very least, her sentence should. So I think just kind of, I think everyone's probably aware there are any number of cases pending before this court about the constitutionality of 922G1. Assuming that there will be some case that comes out and tells us whether your facial challenge is correct or not, and that's probably not going to be something this panel will wind up having to decide, could you maybe focus your attention on the as-applied challenge? Hypothetically, we don't know, but let's say someday we are told that one can bring an as-applied challenge. Why don't you tell us why you think your challenge would succeed here on that basis? Of course, Your Honor, and thank you for pointing to that, because this case is different than the pending cases before this court. It is unusual because of the facts of this case, which are that Ms. Sternquist's crimes were truly nonviolent. They were committed with computers, with paper, with special ink, and coupled with that, her possession of the guns was within the core of the Second Amendment for her protection. Let me ask you about that, because we do talk about the possession of firearms in the home as core, but this was not a handgun under the mattress, right? This was a lot of pieces of a lot of different kinds of guns, a lot of devices that are disputed about what kinds of accessories, one gun that is arguably automatic or at least semi-automatic. Does that matter to that core protection? Is it all devices defined under the incredibly broad definition of firearm in our statutes in a home qualify for that core protection, or are we thinking about a firearm that is ready and able to defend the homeowner as core? This is the core of the Second Amendment. She had these guns and gun parts to protect herself. The government doesn't dispute that. Having a gun even unloaded, which she had no ammunition, is something that you can use if you feel threatened, and that is what the Second— Do you want me to explain that again? How do you use a gun without ammunition? I mean, to hit something like a pistol with somebody? No, just to display it, Your Honor, and obviously this court recognizes that as federal law. Well, you don't need a real gun to do that. I mean, if really all you want to do is fake somebody, then you can have a BB gun. The point is that the Second Amendment protects people's rights to have a gun for their defense, and that is what we have here. The government has never disputed that. You think—again, if we're going towards an as-applied challenge, and here I think you're focusing on the facts of the current offense, and I have a question whether that's the analysis. You're saying that the right extends to not a situation where someone conceitedly, I suppose, if they don't have ammunition, cannot use the gun as a gun, but can use it to display it to someone to scare them into thinking they have a gun. Yes, the Second Amendment applies to guns that are unloaded. There's no dispute about that, Your Honor. But I also think you are correct. But the function you're saying is to brandish it? That's the function of the gun that we should be protecting? The function is for her protection. There's no dispute. Right, but you said without ammunition, the only thing she could do with it is brandish it and scare someone away. And I'm saying, well, if that's true, why would you need a gun to do that? Why couldn't you use a facsimile to do that? It's like putting the alarm sticker in the window of your house when you don't have an alarm, and then the burglar says, well, I'll go to the next house because maybe there is an alarm. That seems to be the theory that you're proposing, but tell me if that's not right.  She had the guns because she was afraid, and there's no dispute about that. I think, Your Honor, it's correct that the analysis is really earlier on whether her prior convictions take her out of the Second Amendment protection. Because that's what I was going to ask. There's at least two ways I can think about doing an as-applied challenge. One would be to say, well, why does someone have the gun now? Is it for protection in the home or that sort of thing? And then the other one would be to say, no, no, no. The question is whether this is a valid penalty. This is a valid stripping of the right. And that would be based, I suppose, on things like the nature of the past felony. Correct. Maybe address that as though it were a separate mode of analysis. Right. The correct analysis for the as-applied challenge is to focus on the past convictions and whether they are appropriate ones to strip her of that right. Or, as Rahimi explains it, whether there was any judicial finding of dangerousness, which there was not. Is there ever a judicial finding of dangerousness? I thought when someone's convicted of a crime, I mean, I'm trying to think, is there any crime you can think of where one of the elements of the crime is that you're a dangerous person? Well, the elements of the crime could include a crime of violence. For example, a 924C. We have laws that include violent offenses. The point is here that we are nothing. Are you saying, I mean, we're going back to the categorical approach for this and we're looking for an element? No, Your Honor. She doesn't have anything near that. She has no history of violence. No, no, that's what I'm saying. Are you suggesting that the way we would evaluate prior felonies is through a categorical approach through an elements analysis? Or you said something about a judicial finding of dangerousness. Would that, in your view, include, say, a judge at sentencing saying, I'm imposing X sentence in part because I think you're a danger to the community? What are you looking for? What is the body of evidence that we look for, in your view, from the past to determine whether a person can validly be deprived of their right to possess a firearm? Right. In Rahimi, the Supreme Court explained that this court looks to the how and the why of the burden on the weapon possession. Here, we have a permanent burden on her gun rights as opposed to a temporary one in Rahimi. And the temporary ones in all of the situations cited by the government. And the why isn't based on a finding of dangerousness. In Rahimi, the court said temporary disarmament for when there is a finding of dangerousness is OK. Here, we have nothing close. That was a little different, though. I mean, that wasn't talking about a conviction. I mean, there was a process in that circumstance that was confronted in Rahimi, right? I'm now taking it into the felony situation, where I'm just not able to conjure up scenarios where judges will have made such findings. Unless you're going back to, I guess, elements of the offense. You know, someone who's committed 16 counts of axe-murdering people or something. But the judge still hasn't made a finding of dangerousness. Right. So the courts in the Third Circuit, the Sixth Circuit, the Fifth Circuit, and the Seventh Circuit has left the door open for as-applied challenges. They haven't taken a uniform approach. So there is not one approach to how the as-applied challenge would work. Ms. Sternquist's case is an unusual one, because it is not close to anything that Your Honor is talking about. She has been the victim of violence. She has never been the perpetrator of violence. There is nothing in her background that even hints at dangerousness. But I guess I'm just trying to figure out, just conceptually, what is the thing that we're looking at? Are we looking at the elements of her offense sort of a la categorical approach? Are we looking at, say, the facts, if it were a federal conviction, say, can you look at the facts in the PSR that were adopted by the district court the previous time around? Is it all the facts that the judge in the present case can make as factual findings regarding who she is? Or is it just the facts surrounding her prior conviction? What is the corpus of material that, in your view, a judge in this case can and should be looking at? This is not a question for today. We don't have any questions today because we're in a queue behind other cases. I'm just suggesting that if we were to get to an as-applied challenge, I'm curious as to your view of what is the analytical mode of operations that we would engage in. As the Sixth Circuit explained, there are situations where the line will be hard to draw and there are situations where it will be easy. And the situations where it is easy is when the prior convictions, like here, are committed with paper or with computers, things that are not dangerous under any argument. If I may move to her sentencing, which was – Why don't we hold – I think we have reserved two minutes. I understand, Your Honor, but her sentencing here was rife with error from the guidelines. We'll get back to you in two minutes. Why don't we hear from the government? We'll get back to you when their ten minutes are over. We'll hear from you then. Good morning. My name may please the court. My name is Andy Palacio. I'm an assistant United States attorney in the Eastern District of New York, and I represent the United States in this case. On its merits, this case substantially overlaps with two cases pending before this court, Zirka v. Garland and United States v. Thotty. Early in law enforcement's investigation into the defendant, CBP agents seized multiple shipments from China to the defendant's home address, which contained counterfeit law enforcement IDs from agencies such as the U.S. Coast Guard, the Department of State, the U.S. Marshals, and the EPA, which in particular had the defendant's image. The investigation also revealed that at the same time, the defendant purchased multiple firearms components, which could be used to assemble untraceable ghost guns. The defendant did all of this despite having been convicted twice in two different federal districts for making counterfeit IDs and selling templates to make those IDs. This investigation led to a search warrant in the defendant's apartment where federal agents recovered eight ghost guns in various stages of construction, including one machine gun, 15 silencers, a U.S. Marshals raid jacket, fake passports, lost and stolen credit cards and IDs, and more than 50 counterfeit law enforcement IDs, including PIV cards recovered from 18 different federal agencies. Counsel, let me ask you about the machine gun, the item that you're describing as a machine gun, which is disputed. So it took me a while to figure out in reading the reports where it talks about, when I first read this thing, it's got a little lever and it says, you know, automatic, semi-automatic, but it doesn't actually say automatic at the bottom, right? It's got three settings according to the ATF. And the third place for the lever isn't labeled, right? It doesn't say move here to become machine gun, right? But that's where they test fired and they were able to, on some occasions, fire two successive shots, right? That's correct, Your Honor. The machine gun had a setting which the user could toggle between safe, semi-automatic, and automatic. Right, but to be clear, it says automatic on it, right? It's actually labeled the automatic setting? I don't remember offhand if it's actually labeled. The automatic is not, the semi part. Anyway, so there's a sort of device adjustment there. What I'm wondering about, because when I look at the briefing on the items that are alleged to be silencers, there was a recognition of a mens rea sort of knowledge, understanding, and we're looking at the dimples and that makes it obvious these aren't really solvent catchers. I didn't see that same analysis in terms of this automatic weapon, and that's why I was so interested to see whether the mental picture I had of a bright label that said automatic when I learned that that was wrong, how do we know that? How do we hear? First, do we need her to know in the context of a sentencing increase? So this is the 14 to 20 base offense level. I'm skipping the silencer argument for now. Do we need her to know that it could have functioned as a machine gun, and what evidence was there to establish, which I assume would be by a preponderance, that she did, in fact, know that it could function as a machine gun? So with respect to the machine gun, the machine gun is relevant to determine whether or not the base offense level is 20. In this case, it is 20 because she had 15 silencers. Right. I'm skipping the silencers. Let's assume for the sake of argument that we think that the silencers are all for catching solvents. I want to talk about the machine gun argument. So the machine gun is relevant for the four-point enhancement, whether or not the defendant had between eight and 24 firearms. Whether or not, assuming for a moment that the machine gun is not a machine gun, it is still a firearm. So the defendant had eight firearms. But it is a machine gun, and it's relevant for the court to consider all of the ATS analyses and conclusions because in this case, when they test fired the- I'm trying to ask a narrow question, which is when we're talking about enhancements for, I hate that word because for at least 50% of the people in the case, it's not enhancing the sentence, but increases to the guidelines for either the potential silencer, which there is an argument that it is not on its face, a silencer, or the potential machine gun, which there is argument it's not on its face, a machine gun. What is the mens rea requirement and what evidence was there to support the fact that Ms. Sternquist knew that this item, this firearm, functioned as a machine gun for purposes of that guidelines provision? Yes. The requirement here is that simply the requirement under the statute, 5845, that it's a weapon which shoots- Did she have to know that? That is not my understanding, Your Honor, that she had to know that. But in this case, we can- So the first step is she's not required to know that it could function as a machine gun in order for it to trigger the 20, base offense level 20 instead of 14. That is my understanding, Your Honor. What is important- Same for the silencers? Not required that she know that it- For the silencers, there is- the definition of silencers is that they're intended to be used in assembling or fabricating any part intended to be used in an assembly or fabrication. In this case, I think the district court was entitled to infer that the defendant intended for the silencers to be used as silencers for three reasons. I'm sorry to keep bringing you back, but that's the difference is that for silencers, the statute has this word intended. That implies a mens rea requirement, but the machine gun statute does not. So there's no need for the possessor to know that it could function as a machine gun for that increase to apply. That's correct, Your Honor. Okay. Thank you, sir. We can go back to silencers then if that's where you want to be. Your Honor, in this case, I can turn to the as-applied discussion. If you'd like, I can return to the sentencing discussion. You have four minutes. Great. With respect to the as-applied challenge in this case, as an initial observation, 922G1 already limits the type of criminal conduct that comes within the purview of the statute. Misdemeanors do not count. Only crimes that are punishable by more than one year. Felony antitrust violations, unfair trade practices, restraints of trade, and other offenses relating to the regulation of business practices do not count. So in this case, as a starting point for this court's analysis, Bogle remains binding precedent in this circuit. So the defendant's constitutional challenge here is foreclosed. The only thing that grew and changed was the means and scrutiny analysis, which circuits, including the Second Circuit, were using to analyze Second Amendment claims in the wake of Heller and McDonald. This type of analysis did not form a part of this court's decision in Bogle. So therefore, it is controlling precedent. Well, why don't we hypothesize for the sake of today's argument that we're behind other cases that will be decided well before we are. And let's just say, imagine, and I have no reason to believe this will happen, but just let's say Zerka comes out and says, in light of Rahimi, we are no longer bound by Bogle. We reject a facial challenge to 922G1, but there is such a thing as an as-applied challenge. How would you then argue in defense of the conviction? Well, I would argue that in any event, the government has met its post-Bruin burden of proof. Even if the constitutional challenge, as Judge Nardini has indicated, is not foreclosed, our nation's historical tradition of firearm regulation would still compel the same conclusion. The Supreme Court in Bruin was very clear that for the government to justify a regulation implicating a Second Amendment right, it need only identify a well-established historical analog, not a historical twin to pass constitutional muster. In other words, it does not need to be a dead ringer, which is the language of Bruin. The government has met that burden here because there is historical precedent that early Americans applied the death penalty for all serious crimes, including nonviolent crimes like forgery and counterfeiting. This is an a fortiori argument that because in colonial times you could be executed for any felony, a fortiori the courts can't impose, what, any penalty short of death? That's right, that's right. So in other words, the greater includes the lesser. So if the greater punishment of death was permissible to punish felons, then the lesser restriction of permanent disarmament is also justifiable. So you're saying the as-applied challenge always comes out the same as the facial challenge? Again, because I've hypothesized a world where the facial challenge fails, but we say we can't have an as-applied challenge. You're saying because 922G1 only applies to people who have prior felonies, by definition the as-applied challenge will always fail? What I'm implying here, Your Honor, is that we have here a historical analog. No, no, no, no. Just answer my question. Are you saying that by definition the as-applied challenge will always fail? Yes. Because by definition it's a felony? Yes. Okay. Yes, Your Honor. In this case we do have a historical analog with the crimes of counterfeiting and forgery. So, for example, if a felon's prior conviction was for carjacking, we wouldn't have a historical twin because cars did not exist at the founding era, but horse theft did exist, and that is enough to historically analogize to a statute in the founding era. I guess people didn't hijack wagons back in the day. Yes. All right. Well, I think we have the government's argument. Thank you. Why don't we go back to this glasshouser, and I know you would like to turn back to the sentencing, so if you would like to, well, you can spend your two minutes however you like. Thank you. The government is just wrong on the mens rea required for a machine gun. In U.S. v. Staples, a Supreme Court case says that the person has to have knowledge. The government has never responded to that argument, and the court never made a finding either for silencers or a machine gun about Ms. Sternquist's mens rea. She did not have silencers. She did not have a machine gun. With respect to the selector, Your Honor is right. It does not say automatic, and the ATF report elsewhere notes that the same selector, in a different part, it views as having two safety positions, so one for fire, two safeties, and that's on GSA 82. There's nothing about this part that suggests that Ms. Sternquist used it with the intent to make a gun fire automatically. So there's nothing about those two items, that item that makes it fall within the statute. The same is true for the things that the government calls silencers, which are tubes that do not have holes drilled through them. The government has not pointed to any cases where that is enough. They don't respond to our case law for intent to modify. Are there any cases the other way? I mean, it seems like kind of a rare actual scenario, this idea of, you know, almost finished silencers. So I'm not sure whether cases on point about that. I mean, if you have cases on your side saying that when they have somebody who's got a tube with a dimple and it just hasn't been poked through, then by definition it cannot and never may be considered a silencer. That's one thing, but the absence of case law on a bizarre factual scenario hardly seems. It's not bizarre. The ATF has a bulletin about this and says that the key issue is intent as to whether it is a legal, normal, purchased online gun accessory.  But do we have case law? You were saying there's no case law. Do you have any case law on your side about this? Yes, that intent is required. No, I don't know. I mean, about the silencers, about the particulars. If somebody's got a silencer with a dimple that we've said, then by definition you don't have intent to make it a silencer. The case law shows that if there's a modification and there's no modification needed to make it a silencer, for example. Yeah, but that's the abstract legal principle. I understand you're saying that's the legal principle, but I thought you were saying there's no case law about these particular types of tubes with the dimples. The case law says that if you have to modify the item to make it a silencer and there's no indication you intended to do so, it is not a silencer. That's what Cooker says. Right, but the question would be whether there's intent here. And then you can debate. You would say there's no intent. They would say, my gosh, she's got these solvent pools or whatever you call them. No, it's a legal question, and then the judge did not make an adequate finding, even if intent was required. The judge just blew off this argument the same as with the machine guns. So if we agreed with you that there were inadequate findings on that, that there just was no finding of intent one way or the other, would the proper approach be then to remand it to the district court and say, fine, yes intent or no intent, right? Because we don't generally engage in factual finding ab initio, right? The proper approach would be to vacate her sentence and remand it for the judge to properly apply the guidelines. Right, okay. Ms. Sternquist was shackled to a bed for almost two years. She lacked medical care. She was in solitary confinement, effectively. She was partially paralyzed. And the court at sentencing talked about 9-11, quote, gangbangers, murderers. It talked about facts. These are the people into whose hands things like the raid jackets or the IDs or presumably the guns could fall into their hands, right? It wasn't comparing Sternquist to those people but saying this is what happens when you generate counterfeits and you put bad things out in the public. Bad actors get their hands on it and who knows what happens. That's not what she was doing. She was saying it was like Ms. Sternquist saying she was afraid to put her gun possession in context was the same as a murderer saying they had murdered somebody in legal self-defense. Those are not the same. Those comments were completely inappropriate at the sentencing. The judge also made factual errors saying she was out on bond and committing new crimes. She was not on bond. The judge focused on MDC conditions when she had been shackled in a nursing home. This was not somebody that was at MDC. Okay, we have your argument. Thank you very much and we will take the case under advisement.